J-S03015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: F.B.-G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.R.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1325 WDA 2016 |

Appeal from the Order Entered August 24, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court Division at No(s): CP-02-AP-000016-2016

BEFORE:  OLSON, SOLANO, and STRASSBURGER[*], JJ.

MEMORANDUM BY OLSON, J.:                **FILED MARCH 3, 2017**

S.R.G. ("Mother") appeals from the order entered on August 24, 2016, terminating her parental rights to her female child, F.B.-.G., a/k/a F.M.G., a/k/a F.M.B.-G. ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511.[1]  We affirm.

The trial court set forth the following factual background and procedural history as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In that same order, the trial court terminated the parental rights of Child's father, R.A.P. ("Father"), and any unknown father.  Neither Father nor any unknown father has filed an appeal from the termination of his parental rights to Child, nor is any such individual a party to the instant appeal.

[Child] was born [in January of 2014] to [Mother]. [… Children Youth and Families ("CYF") became involved] with Child's family [] in 2010 after CYF received reports that Mother suffered mental health and substance abuse problems, was a victim of domestic violence, and did not have stable housing, raising concerns about the welfare of Child's older siblings. CYF remained involved with Child's family, and when Child was subsequently born in 2014, CYF applied for emergency protective custody of child, four days after Child's birth, out of concern that Mother was not receiving mental health treatment, and that Mother did not have stable housing. [The trial court] granted CYF's application on January 9, 2014, and conducted a shelter care hearing on January 10, 2014, at which Mother provided evidence that she had been receiving mental health services and was no longer in need of treatment, and that she had obtained suitable housing. Accordingly, Child was returned to Mother's care, with in-home services.

In April 2014, CYF lost contact with Mother, and efforts by CYF to locate her were unsuccessful. N.T., 8/12/2016 at 23. On May 21, 2014, CYF filed an application for Emergency Protective Custody after Women's Space East reported to CYF that Mother had entered their homeless shelter on May 11, 2014, and that Mother had resisted efforts by the shelter to find housing for her. *Id.* at 23. On May 21, 2014, [the trial court] entered an order for Emergency Protective Custody, and Child was placed in foster care. *Id.* at 24-25. Child has not returned to the care of a parent since that date, and was adjudicated dependent on August 6, 2014.

CYF filed a petition for involuntary termination of parental rights [] on February 2, 2016, amended on July 27, 2016. [The trial court] conducted a hearing on the [termination of parental rights] petition on August 24, 2016, and that same day entered an order terminating Mother's parental rights, as well as the parental rights of Father, R.A.P. This appeal followed.

Trial Court Opinion, 10/13/2016, at 2-3.

On September 7, 2016, Mother filed a notice of appeal, along with a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.

1925(b). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 13, 2016.

On appeal, Mother raises the following issues:

1. Is the [t]rial [c]ourt's finding a grounds for [i]nvoluntary [t]ermination of Appellant's [p]arental [r]ights under 23 Pa.C.S.A. § 2511(a)(2), § 2511(a)(5), and § 2511(a)(8) proven by a showing of clear and convincing evidence?

2. [Was] the [t]rial [c]ourt's finding that [t]ermination of [p]arental [r]ights serves the developmental, physical and emotional needs and welfare of the Child [ ] proved by clear and convincing evidence as required by 23 Pa.C.S.A.§ 2511(b)?

Mother's Brief, at 5.[2]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate

_____

[2] It appears that Mother initially raised an additional issue: whether the trial court erred in finding that CYF had proved by clear and convincing evidence that the conditions which led to the removal of Child had not or could not be remedied within a reasonable period of time. As she does not raise that issue in her statement of questions involved portion of her brief, we find that she waived the issue. **See Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal). However, Mother has preserved the challenge to the extent that the issue is part of the consideration of the Section 2511(a) factors.

courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As [our Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Pennsylvania Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id.* (internal citation and quotation omitted).

- 4 -

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will focus on Section 2511(a)(2), before examining Appellant's claim pertaining to Section 2511(b).

Section 2511(a)(2) provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental

rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Mother argues that the trial court erred in terminating her parental rights under Section 2511(a)(2) because CYF failed to prove, by clear and convincing evidence, that grounds existed to support the termination. Mother asserts that the primary reason that CYF removed Child from her care was that Mother had mental health issues and lacked consistent housing. Mother states that her Family Service Plan ("FSP") goals were to obtain mental health treatment and stable housing, and to maintain visitation with Child. Mother admits she had not completed all of her FSP goals at the time of the hearing, but she contends that she made progress toward completion of all of those goals.

Mother asserts that she had several mental health evaluations, after which there was no recommendation for treatment. Mother states that, in her last evaluation, Dr. Patricia Pepe recommended that Mother have mental health treatment because Mother disclosed abuse by her mother. Mother testified that she was willing to follow through with Dr. Pepe's recommendation.

Mother further avers that, at the time of the hearing, she had stable housing that would be appropriate for Child and that her utility payments

were current. Mother states that CYF had recently inspected her housing and found it to be appropriate for Mother's visits with Child.

Mother also alleges that she consistently maintained visitation with Child during certain times. Mother claims that, at times, transportation issues made it difficult for her to maintain consistent visitation. Additionally, Mother states that the caseworker and the in-home worker testified that there were never any concerns of inappropriate interaction reported with regard to her visits with Child. Moreover, Mother states that the caseworker testified that Mother's interactions with Child have always been positive, and that she observed a bond between Mother and Child. Mother claims that Dr. Pepe, in both her evaluation and testimony, indicated that Mother is very appropriate in her interaction with Child; Child is very comfortable with Mother; and Mother exhibited positive parenting skills and had a good understanding of Child's developmental needs. Mother acknowledges that Dr. Pepe recommended the termination of Mother's parental rights. Mother, however, emphasizes that Dr. Pepe testified that it would be beneficial to Child to have some contact with Mother. *See* Mother's Brief, at 11-15.

The trial court found as follows with regard to Section 2511(a)(2):

A review of the record and testimony provides clear and convincing evidence that termination was warranted under 23 Pa.C.S.A. []§ 2511(a)(2)] . . . as to Mother, and that termination of Mother's rights best served the needs and welfare of Child. In making its determination, [the trial court] relied on the credible testimony of David Sprague of CYF who testified that on June 20, 2014, CYF implemented a Family Service Plan which included goals that Mother secure stable housing (given Mother's history

- 7 -

of difficulty maintaining a stable home), achieve financial stability, and regularly visit with Child. N.T. 8/12/16, at 25, 32. However, since Child was removed from Mother's care, Mother has lived in several locations, including women's shelters, and has experienced evictions and periods of homelessness, despite the provision of services to assist her in securing stable housing. Mother has additionally experienced ongoing difficulty paying rent and utilities, despite receiving budget counseling services provided by Holy Family Institute, and services to help her obtain housing and pay her bills, including referrals to Urban League and Greater Valley which provided Mother with rent assistance. *Id.* at 25-30. Moreover, Mother has experienced difficulty maintaining consistent visitation with Child. Although Mother visited with Child consistently from April 2014 to December 2014 when Child was brought to Mother's house, when Mother was required to travel away from her home in order to visit with Child, Mother's visits became sporadic. *Id.* at 32-34. Mother attributed her failure to attend all her visits with to transportation difficulties. *Id.* at 91.

* * *

After careful review of the evidence and testimony of record, [the trial court] concluded that Mother is unable to parent Child. Mother has consistently failed to timely comply with the goals established in the [FSPs]. [The trial court] recognizes that even though a bond exists between Mother and Child, and Mother exhibits some positive parenting skills, Mother has been unable to secure stable housing, experienced repeated periods of homelessness, and neglected to responsibly manage her finances despite assistance, resulting in a failure to provide a stable and secure environment for Child. In addition, Mother did not maintain regular visitation with Child, particularly when required to make the effort to travel on those occasions when Child was not brought to her home. Because of Mother's lack of any consistent effort to give priority to her parenting, and her lack of consistent progress in completing her goals, Child continues to remain in care. Moreover, Mother's history of mental illness, including her allegations that she fabricated symptoms of schizophrenia, have affected her ability to provide Child with consistency, stability and a secure home environment, and indicate a continuing failure to prioritize Child's needs.

Trial Court Opinion, 10/13/2016, at 6-9. As such, the trial court found clear and convincing evidence that termination of Mother's parental rights under Section 2511(a)(2) was merited.

We agree that termination was warranted pursuant to Section 2511(a)(2), as Mother clearly lacks parental capacity, and the evidence showed that she will be unable to remedy that situation within a reasonable period of time, if ever. As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we find no abuse of the trial court's discretion in finding that Mother's parental rights be terminated under Section 2511(a)(2). *In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

In her second issue presented, Mother asserts only that the trial court erred in finding that CYF proved by clear and convincing evidence that the termination of her parental rights best meets the needs and welfare of Child as set forth in 23 Pa.C.S.A. §2511(b). *See* Mother's Brief, at 16-17.

Section 2511(b) provides, as follows:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

We have explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], [our Supreme Court] held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, no formal bonding evaluation or expert testimony is required; social workers and caseworkers may offer their evaluation and opinion. *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are, likewise, a relevant part of this analysis. We have stated that

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the trial court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

Our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *See In re: T.S.M.*, 71 A.3d at 267 (citation omitted). Our Supreme Court has

- 11 -

instructed, "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *Id.* (citation omitted).

We have explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (*citing In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

Herein, regarding Section 2511(b), the trial court concluded:

[The trial court] additionally considered the credible testimony of Dr. Patricia Pepe who conducted psychological evaluations of Mother, and who indicated that Mother has a positive relationship with Child. Dr. Pepe testified that she observed Child interact with Mother, that Child was "spontaneously affectionate" with Mother, and that Mother "consistently and positively interacted" with Child, and exhibited positive and appropriate parenting skills. [N.T. 8/12/16,] at 76. However,

- 12 -

Dr. Pepe observed that Mother had a history of "chronic instability," in particular with regard to maintaining housing, and that Mother consciously engaged in conduct that put her at risk for homelessness, such as refusing to pay rent because she believed that her apartment needed repairs, resulting in her eviction. *Id.* at 77-78. Dr. Pepe further testified that Mother often displayed poor judgment and a lack of rational thinking, in particular with regard to her finances, the mishandling of which contributed to her inability to maintain stable housing, and also with regard to her failure to make it a priority to arrange transportation to visit Child and maintain regular contact with her. *Id.* at 80. Dr. Pepe's psychological evaluations indicated that Mother has a history of depression, and was diagnosed with schizoaffective disorder in April, 2011 after reporting that she suffered hallucinations.

However, in October, 2011, Mother reported that she had not actually suffered hallucinations, but that she had fabricated her account of experiencing hallucinations in order to receive social services. Dr. Pepe did note, however, that Mother was hospitalized at Western Psychiatric Institute and Clinic from June to September, 2011. *Id.* at 62.

Dr. Pepe further testified that she observed Child interact with her foster mother, and testified that foster mother was "consistently responsive to the child" who referred to her as "mommy," and that Child exhibited a "positive and primary attachment" to foster mother. N.T., 8/12/16, at 75. In addition, Tanaeya Anderson of Auberle, which provides foster care services, testified that Child has a "very tight bond" with her foster mother, and that the relationship between Child and foster mother is "very natural" "almost to the point where you can't tell [Child] that's not mom and you can't tell foster mom that's not her daughter." N.T., 8/12/16, at 57. Ms. Anderson testified that foster mother is able to meet Child's developmental, physical, and emotional needs. *Id.*

* * *

[] Child is currently in a foster home that is able to provide for her needs. In light of the foregoing, [the trial court] conclude[d] that CYF proved by clear and convincing evidence the grounds for involuntary termination of Mother's parental rights pursuant to § 2511(b) and that terminating Mother's parent rights best

serves the developmental, physical and emotional needs and welfare of the child.

Trial Court Opinion, 10/13/2016, at 7-9.

We agree with the trial court's assessment. There was sufficient, competent evidence of record for the trial court to find that no bond exists such that the Child would suffer permanent emotional harm from the termination of Mother's parental rights. Hence, we agree that termination of Mother's rights was proper under Section 2511(b).

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 616 Pa. at 325-26, 47 A.3d at 826-27. We, therefore, affirm the order terminating Mother's parental rights with regard to Child under Section 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2017

- 14 -